IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

L.S.[1],

        Plaintiff,

v.                                                                                             Case No. 24-1113-JWB

CAROLYN W. COLVIN,
Acting Commissioner of Social Security[2],

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income. The matter is fully briefed and is ripe for decision. (Docs. 7, 11, 12.) For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I.      Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used for privacy concerns.
[2] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both steps four and five. *Id.*, §§ 404.1520(a)(4), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs

existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

**II.    Background**

Plaintiff applied for benefits on January 8, 2021. The claim was denied administratively both initially and upon reconsideration. Plaintiff subsequently requested an evidentiary hearing before an Administrative Law Judge ("ALJ") on December 28, 2022. (*See* Tr. at 18.[3]) On April 17, 2023, ALJ Susan Toth held a hearing by telephone conference and heard testimony from Plaintiff and vocational expert Julie Svec.

At the hearing, Plaintiff testified that she suffered from hereditary angioedema[4] which causes her stress, uncontrollable vomiting, and severe pain. (Tr. at 65.) Ultimately, she has to go to the hospital for IV medications. (*Id.*) She testified that the episodes last five to seven days and that she can have 15 episodes a year. (Tr. at 66.) The ALJ clarified if she was experiencing the symptoms more than one week per month. In response, Plaintiff stated that she was but "not to the point where I have to seek medical treatment." (*Id.*)

On June 15, 2023, the ALJ denied Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2021. (Tr. at 22.) At step two, the ALJ found Plaintiff had multiple severe impairments most of which are not at issue in this

---

[3] Citations to "Tr." refer to the Bates' numbering in the administrative transcript. (Doc. 6.)
[4] The court limits the recitation of Plaintiff's testimony to the issue before the court.

appeal. At issue are her impairments of hereditary angioedema and cyclic vomiting syndrome. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled any of the presumptively disabling impairments listed in the regulations. (*Id.*)

The ALJ determined that Plaintiff has the RFC to perform sedentary work as that term is defined in the regulation except as follows:

> that the claimant can lift, carry, push and/or pull 10 pounds occasionally and less than 10 pounds frequently. The claimant can stand or walk in combination for 2 hours in an 8-hour workday with normal breaks and can sit for 6 hours in an 8-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch and crawl and can occasionally balance as that is defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles. The claimant can have no more than occasional exposure to extreme cold, vibration and atmospheric conditions as defined by SCO of the DOT. The claimant must avoid all exposure to hazards such as moving mechanical parts and working at unprotected heights. The claimant can carry out simple instructions with normal breaks that do not require more than occasional interaction with coworkers, supervisors and the general public and she can make judgments on simple work-related decisions. The claimant can deal with occasional changes in a routine work setting that is consistent with the other limitations.

(Tr. at 25–26.)

At step four, after an extensive review of the evidence, the ALJ determined Plaintiff was unable to perform past relevant work. (Tr. at 36.) At step five, the ALJ determined that Plaintiff could perform sedentary work, including positions such as weight tester, assembler, and charge clerk, which exist in significant numbers in the national economy. (Tr. at 37.) Accordingly, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act

### III. Analysis

Plaintiff argues that substantial evidence does not support the ALJ's findings because the ALJ failed to properly evaluate Plaintiff's symptoms caused by her hereditary angioedema and

cyclic vomiting syndrome. (Doc. 7 .) The Commissioner argues that the ALJ reasonably evaluated the evidence, accounted for Plaintiff's gastrointestinal symptoms in the RFC, and that substantial evidence supports the ALJ's findings.

A reviewing court generally defers to the ALJ's conclusions regarding the credibility of the claimant so long as the conclusions are supported by substantial evidence. *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). When evaluating a claimant's allegations of pain and other symptoms, the ALJ uses a two-step process: (1) the ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; and (2) the ALJ evaluates the intensity and persistence of the symptoms and determines the extent to which the symptoms limit the claimant's ability to perform work. SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017). These steps are consistent with the regulation. *See* 20 C.F.R. §§ 404.1529 (How we evaluate symptoms, including pain). The ALJ may also consider factors such as the claimant's daily activities; factors that aggravate the symptoms; the type, dosage, effectiveness, and side effects of medications taken; treatment other than medication; and other measures the claimant has used to relieve pain or other symptoms. SSR 16-3P, 2017 WL 5180304, at *7–8.

Here, the ALJ followed this two-step process, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 26.) The ALJ analyzed Plaintiff's allegations and medical history to determine the intensity, persistence, and limiting effects of Plaintiff's gastrointestinal symptoms and whether Plaintiff's statements were consistent with the evidence.[5] (*Id.* at 26–35.) That discussion included a

---

[5] The ALJ's discussion of the evidence related to Plaintiff's allegations and medical history spans about ten pages. (Tr. at 26–35.) This discussion included all of Plaintiff's impairments and was not limited to the issues here. The court will not address those other impairments and the findings related to the same, however, as they are not at issue.

5

chronological overview of Plaintiff's medical history, including discussions of emergent treatment related to her hereditary angioedema and cyclic vomiting syndrome, and insight into Plaintiff's daily activities as they relate to her symptoms and ability to function. (*Id.*)

Ultimately, the ALJ reached the conclusion that Plaintiff could perform sedentary work with restrictions based on Plaintiff's allegations and testimony, objective medical findings, medical opinions, and treatment notes and other relevant evidence. (*Id.* at 36.) Further, the ALJ stated that the RFC accounted for Plaintiff's symptoms related to the hereditary angioedema and cyclic vomiting syndrome. (*Id.* at 32) ("The limitations also contemplate the intermittent angioedema flares and cyclic vomiting syndrome to avoid exacerbating the reported stomach inflammation and pain.")

Plaintiff contends that the ALJ failed to properly evaluate her testimony that she suffers from episodes of extreme nausea, vomiting, and abdominal pain and that these episodes occur for several days and up to 20 times a year. The ALJ, however, did evaluate her subjective symptoms and the evidence. The ALJ stated that Plaintiff "reported frequent nausea and vomiting." (*Id.* at 26.) The ALJ also discussed two of Plaintiff's trips to the emergency room regarding these issues. As to those visits, the ALJ noted that she sought emergency treatment in February 2022 for nausea, vomiting, and abdominal pain. She was treated with fluids and IV promethazine, and her heart rate improved. (*Id.* at 29.) She also declined further treatment and left against medical advice. (*Id.*) The ALJ also discussed an emergency room visit in December 2021 where Plaintiff sought emergency treatment for nausea and vomiting as a result of hereditary angioedema. (*Id.* at 31.) Plaintiff was again treated with IV fluids, pain medication, and nausea medication. The treating provider advised her to stop using marijuana as it could be a cause of the symptoms. (*Id.*) Also,

6

the ALJ noted that Plaintiff reported to a provider that promethazine suppositories helped with her condition. (*Id.* at 29.)

The record shows two earlier emergency room visits due to nausea and vomiting in April 2021 and October 2021. Plaintiff was administered IV fluids, morphine, and Zofran, which made her feel "much better." (Tr. at 391). She was also given prescription medication to treat nausea at home. She returned to the emergency room in October. During that visit, she reported that she had "5" attacks like this during a year. (Tr. at 801.)

Plaintiff contends that these visits and her testimony support the conclusion that the ALJ failed to properly evaluate her hereditary angioedema and cyclic vomiting syndrome. But Plaintiff is essentially asking the court to reweigh the evidence which it cannot do. There is sufficient evidence in the record that Plaintiff's statements regarding the severity of her symptoms are inconsistent with the other evidence. As pointed out by the ALJ, Plaintiff's symptoms improved with medication. (Tr. at 32.) Further, the record shows that Plaintiff has other activities that she does. (Tr. at 35.)

The ALJ's reasoning shows that he considered Plaintiff's reported symptoms and found certain limitations appropriate in light of that evidence as discussed in the record. The court finds there is substantial evidence to support the ALJ's conclusions about Plaintiff's gastrointestinal symptoms.

## IV. Conclusion

The final decision of the Commissioner denying Plaintiff's application for benefits is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.  Dated this 13th day of January, 2025.

                                                                                   _s/ John W. Broomes_  
                                                                                   JOHN W. BROOMES  
                                                                                   UNITED STATES DISTRICT JUDGE